# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID G. FROHNAPLE, ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | 1:08CV387 |
| ) | |
| Defendant. ) | |

This matter is before the court on motions for summary judgment by both parties. (docket nos. 19, 21). Each party has responded in opposition to the respective motions, and the matter is ripe for disposition. The parties have not consented to the jurisdiction of a magistrate judge. Therefore, the motions must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion for summary judgment, deny Plaintiff's motion for summary judgment, and hold that Plaintiff is liable for the trust fund recovery penalty assessed against him in connection with the Boling Group's failure to pay employment taxes for taxable periods ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001.

## BACKGROUND

Plaintiff David Frohnaple filed this action seeking a refund of disputed employment taxes he paid to the Internal Revenue Service ("IRS") on behalf of Boling Group, LLC ("Boling Group" or "the Company"). Plaintiff maintains that, in accordance with statutory procedure, he paid $500 to the IRS. The IRS additionally

withheld an income tax refund due to Plaintiff to pay the Company's delinquent employment taxes. Plaintiff then filed a claim for a refund with the IRS, which the IRS denied.

Plaintiff then filed this action, in which he seeks a (I) refund of all amounts paid to or seized by the IRS for the employment taxes (totaling $13,932), and (ii) abatement of all other amounts alleged by Defendant. Defendant has counterclaimed that Plaintiff is personally liable for all past-due employment taxes owed by Boling Group for the quarters ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001, and Defendant seeks a judgment in an amount equaling the remaining outstanding taxes. Plaintiff contends that he is entitled to summary judgment on both his claim for a refund and on Defendant's counterclaim because he did not "willfully" fail to pay the employment taxes owed.

**UNDISPUTED FACTS**

Plaintiff's Purchase of the Company

The Boling Group was a business that manufactured and sold furniture. When Plaintiff learned about the opportunity to purchase the Company, the Company was struggling financially, but Plaintiff believed that he could make it profitable. Plaintiff approached Michael Shields with the opportunity to become a partner in the Company. Plaintiff and Shields purchased the Company in February 1998 and changed the name to the Boling Group, LLC. Robert ("Zizzy") Osborne also

invested some of his own money into the Company, although he was not involved in the Company's day-to-day management.[1]

The only two officers in the Company were Plaintiff, who served as the Company's president, and Shields, who served as the Company's executive vice-president. As president, Plaintiff oversaw the entire Company, including the financial operations, sales, marketing, human resources, and the overall general management. As executive vice-president, Shields handled engineering operations, including overseeing the daily operations of the manufacturing and design of certain products and dealing with all the product-related issues, i.e., manufacturing, design, and engineering.

During the relevant time period, various persons served as either Chief Financial Officer ("CFO") or controller of the Company. Julius Dizon served as a controller and then as CFO from December 1999 to August 2000. Dizon's responsibilities included installing and implementing a cost accounting system. He was also in charge of the accounting department, including procurement, accounts receivables, accounts payables, purchasing, and payroll.

Anthony Ciaccio was the assistant controller from March 2000 to August 2000. When Dizon left, Ciaccio assisted Plaintiff with the finances until Phyllis Younts began working as controller in September 2000. One of the reasons that Younts

---

[1] Plaintiff asserts that due to cash flow problems, the Company also found an additional investor, Boling Holdings, LLC.

was hired was to deal with the Company's tax problems. The Company fired Younts in March 2001.

The Company's Financial Problems

As noted, the Company was in financial distress when Plaintiff and Shields purchased it, and it continued to struggle financially throughout its operation. Plaintiff knew about the Company's cash problems and addressed these problems in various ways. For instance, he made over $200,000 in personal loans to the company to help address its operational needs. He also did not take a salary at certain times because the Company did not have enough money to pay him. Furthermore, Plaintiff attended weekly and monthly meetings to discuss the Company's finances. Typically, these meetings involved deciding which creditors should get paid and in what order. Plaintiff also received updates regarding the Company's financial condition, and he attended meetings with the CFOs/controllers, the Company's outside accountant Dixon Odom, and the Company's primary investor Zizzy Osborne. Plaintiff also attempted to obtain additional financing to assist with the operational cash flow needs of the company. Despite Plaintiff's and Shield's efforts to turn the Company's financial situation around, the Company continued to lose money and filed for bankruptcy in 2001.

The Company's Failure to Remit Employment Taxes Beginning in the Second Quarter of 2000

It is undisputed that during the 15-month period from April 1, 2000, to June 30, 2001, the Company failed to pay to the United States the employment taxes withheld from the wages of the Company's employees. Plaintiff first learned that the Company was delinquent in making the payroll taxes in August 2000 when Dizon left the Company. On or about October 19, 2006, the IRS assessed against Plaintiff personally a penalty under 26 U.S.C. § 6672 for the taxable periods ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001, in the total amount of $515,599.02, representing an amount equal to the income and employment taxes that were required to be withheld from the wages of the Company's employees and that were not paid to the United States when due.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**ANALYSIS**

The Fourth Circuit very recently explained the duty of employers to pay payroll taxes and the penalty that may be personally imposed against various "responsible" persons for an employer's failure to pay the taxes:

> The Internal Revenue Code requires employers to withhold social security and federal excise taxes from their employees' wages. *See* 26 U.S.C. §§ 3402(a), 3102(a) (2006); *Plett v. United States,* 185 F.3d 216, 218 (4th Cir. 1999). The employer holds these monies in trust for the United States. 26 U.S.C. § 7501(a) (2006). Accordingly, courts often refer to the withheld amounts as "trust fund taxes"; these monies exist for the exclusive use of the government, not the employer. *See Plett,* 185 F.3d at 218. Payment of these trust fund taxes is "no[t] excuse[d]" merely because "as a matter of sound business judgment, the money was paid to suppliers . . . in order to keep the corporation operating as a going concern--the government cannot be made an

> unwilling partner in a floundering business." *Collins v. United States,* 848 F.2d 740, 741-42 (6th Cir. 1988).
>
> The Code "assure[s] compliance by the employer with its obligation . . . to pay" trust fund taxes by imposing personal liability on officers or agents of the employer responsible for "the employer's decisions regarding withholding and payment" of the taxes. *Slodov v. United States,* 436 U.S. 238, 247, 98 S. Ct. 1778, 56 L.Ed.2d 251 (1978) (interpreting 26 U.S.C. § 6672 (2006)). To that end, § 6672(a) of the Code provides that "[a]ny person required to collect, truthfully account for, and pay over any tax . . . who willfully fails" to do so shall be personally liable for "a penalty equal to the total amount of the tax evaded, or not . . . paid over." 26 U.S.C. § 6672(a). Although labeled as a "penalty," § 6672 does not actually punish; rather, it "brings to the government only the same amount to which it was entitled by way of the tax." *Turnbull v. United States,* 929 F.2d 173, 178 n.6 (5th Cir. 1991) (internal quotation marks omitted).
>
> Personal liability for a corporation's trust fund taxes extends to any person who (1) is "responsible" for collection and payment of those taxes, and (2) "willfully fail[s]" to see that the taxes are paid. *Plett,* 185 F.3d at 218; *O'Connor v. United States,* 956 F.2d 48, 50 (4th Cir. 1992). Once the Government assesses a taxpayer for this liability, the taxpayer has the burden of proof at trial on both elements of § 6672 liability. *See O'Connor,* 956 F.2d at 50.

*Erwin v. United States*, 591 F.3d 313, 319 (4th Cir. 2010).

Here, it is undisputed that the Company failed to pay to the United States the trust fund taxes the Company withheld from the wages it paid to employees during a 15-month period from April 1, 2000, to June 30, 2001. Plaintiff was personally assessed liability for the trust fund recovery penalties equal to 100% of the unpaid taxes. As noted, liability under Section 6672 requires a finding that the taxpayer was a "responsible person" and that the taxpayer's failure to ensure that the payroll taxes were paid was "willful." Plaintiff has conceded in his summary judgment motion and

in his brief opposing Defendant's motion for summary judgment that he is a "responsible person" with the meaning of Section 6672.[2]  Thus, the only disputed issue before the court on summary judgment is whether Plaintiff "willfully" failed to collect, account for, or remit payroll taxes to the United States during the relevant time periods.

"Willfulness" under Section 6672

The inquiry into the "willfulness" element of Section 6672 liability focuses on whether Plaintiff had "knowledge of non-payment or reckless disregard of whether the payments were being made."  *Plett*, 185 F.3d at 219.  Thus, the United States can show willfulness by showing either actual knowledge of non-payment *or* reckless disregard as to non-payment.   Courts have held that although mere negligence is not enough to establish reckless disregard, gross negligence is.  *Thomsen v. United States*, 887 F.2d 12, 18 (1st Cir. 1989).  Therefore, a responsible person will be held to have acted with reckless disregard, and thus willfully, if the person clearly should have known that there was a grave risk that taxes were not being paid and if he was in a position to easily find out.  *Id.*; *see also IRS v. Blais*, 612 F. Supp. 700, 710 (D. Mass. 1985) (finding that reckless disregard is shown where the responsible person knows that the person claiming to have paid the payroll taxes is unreliable, where the responsible person does not investigate or correct mismanagement when on

---

[2] For a full analysis of the "responsible person" element of Section 6672 liability, see *Erwin*, 591 F.3d at 320-25.

notice that withholding taxes are delinquent, and where a responsible person continues to pay other bills while knowing that the business is in trouble).

Courts have further held that a responsible person's intentional preference of other creditors over the United States when the responsible person knows that the payroll taxes have not been paid establishes willfulness under Section 6672 as a matter of law. *See Thomsen*, 887 F.2d at 18-19; *United States v. Pomponio*, 635 F.2d 293, 298 n.5 (4th Cir. 1980) (noting that the intentional preference of other creditors was "sufficient to establish the element of willfulness"); *Greenberg v. United States*, 46 F.3d 239, 244 (3$^{d}$ Cir. 1994) ("[A]ny payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes."). Moreover, the Fourth Circuit in *Erwin* very recently, in alignment with every other circuit to consider the question, adopted the rule that "when a responsible person learns that withholding taxes have gone unpaid in past quarters for which he was responsible, he has a duty to use all current and future unencumbered funds available to the corporation to pay those back taxes." *Erwin*, 591 F.3d at 326 (finding that "Erwin's failure to assess and remedy the payroll tax deficiencies immediately upon learning of their existence in August 1999 constitutes unreasonable willful conduct," particularly given that "at Erwin's direction, [the company] paid other creditors during this period").

As noted, Plaintiff was assessed a trust fund recovery penalty for the tax periods ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001. Plaintiff testified that when Dizon left the Company in August 2000, Plaintiff first found out that the payroll taxes had not been paid since April 2000. Specifically, at that time the Company's assistant controller Anthony Ciaccio advised Plaintiff's wife Judy that Dizon had not been paying the taxes, and Plaintiff's wife informed Plaintiff the taxes had not been paid since April 2000. Upon learning of the Company's failure to remit payroll taxes, Plaintiff had an absolute duty to use all corporate funds to pay the currently accruing tax liability, as well as the outstanding tax liability. Plaintiff did nothing, however, to ensure that the taxes were paid and, instead, made payments to other creditors. Indeed, from August 2000 through January 2001, the Company bank deposits totaled more than $1.7 million, none of which was used to pay the payroll taxes, but was instead used to pay other creditors as well as employee salaries, including Plaintiff's own salary.[3] Plaintiff's failure to ensure that the delinquent taxes were paid with these funds meets the willful standard of Section 6672 as a matter of law. In sum, I find that Defendant has shown that Plaintiff has acted willfully for four of the five quarters at issue–the portion

---

[3] Despite Plaintiff's blanket statement that there were no unencumbered funds to pay the payroll taxes during various relevant time periods, the United States has sufficiently come forward with evidence that funds *were* available to make the payroll payments and that those funds were in fact used to pay other creditors, including Plaintiff himself, and Plaintiff has failed to present evidence to the contrary. Similarly, as Defendant notes, Plaintiff's contention that the Company's finances were in too much disarray to figure out the payroll taxes after Younts left in March 2001 is specious.

of the last two quarters of 2000 and the first two quarters of 2001 when he was aware that the payroll taxes had not been paid.

In contending that his conduct was not "willful" during the above time periods, Plaintiff states that he relied on the Company's controller Phyllis Younts to deal with the unpaid employment taxes. Plaintiff asserts that Younts constantly represented to him that she was "handling" the taxes. Plaintiff has admitted, however, that he took no actions to ensure that the taxes were being paid beyond relying on Younts' assertion that they were being paid. Here, by the time Younts was hired, Plaintiff was already on notice that the financial records at the Company were "a mess" when Dizon left, and Plaintiff knew that the Company was already delinquent in making the payroll taxes. Therefore, Plaintiff's reliance on Younts' statements that she was "dealing" with the payroll taxes, without doing anything more to investigate and ensure that they were being paid, was simply more than mere negligence.[4] Moreover, by December 2000 Plaintiff was telling other people that he lacked confidence in Younts' work, and he fired her in March 2001.[5] (Frohnaple Dep. 109)

---

[4] Indeed, as Defendant notes, Plaintiff has not produced evidence showing that Younts stated that she had *actually paid* the payroll taxes that were due; rather, the evidence shows that she merely told him she was "trying to get [the unpaid tax liability] straightened out." (*See* Pl.'s Br. Opp'n, at 5.) Younts' statements that she was still "trying" to get the taxes "straightened out" is not at all an assurance that the taxes had been paid, and her statements to Plaintiff that she was "dealing" with the taxes in no way absolved Plaintiff of the responsibility to ensure that *all* of the payroll taxes were being paid ahead of payments to other creditors.

[5] In an email dated December 28, 2000, to the Company's primary investor and Martin Schlaeppi (the contact at Dixon Odom), Plaintiff stated:

Finance . . . Without a doubt, this is still my major concern. After several

("[I]t became evident . . . her ability to start to not to come to work, not to deliver the financials and her reports.") Put simply, after Plaintiff became aware that the payroll taxes had not been paid when Dizon was the controller, Plaintiff had the duty to exercise greater oversight over the finance department to independently ensure that the payroll taxes were being paid, and his failure to do so during Younts' tenure with the Company amounts to careless disregard. *See Greenberg*, 46 F.3d at 244 (stating that the knowledge of a payroll tax problem creates a duty to investigate and correct mismanagement).

I note that this conclusion does not conflate the separate elements of "responsible person" and "willfulness" in Section 6672, as Plaintiff contends in his brief. That is, there may be situations in which a "responsible" person *has* reasonably relied on false statements by another person in the company that the payroll taxes were being paid and has, therefore, not acted willfully. Here, however, by the time Younts was hired Plaintiff already knew that the Company was delinquent in its payment of the taxes and that the Company was floundering financially; he had himself questioned Younts' reliability; and he could have

---

discussions with Phyllis, I am convinced that she cannot handle the position. She may be a qualified bookkeeper and has done a good job with our vendors, but she cannot handle the planning of the finances. I now believe she could probably not even do an adequate budget. We need a real CFO.

(Def.'s Ex. O).

examined the Company's books to confirm the payments.[6]  These circumstances, when considered together, compel a conclusion that Plaintiff acted with careless disregard in failing to ensure that the payroll taxes were paid.  *Accord Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987) (observing that "if a responsible officer knows that the corporation has recently committed . . . a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against nonpayment").

I also find that Plaintiff is liable for the taxes that went unpaid, beginning in April 2000, and up to the point that Dizon left and Plaintiff first became aware that Dizon had not paid the payroll taxes because Plaintiff's conduct as to that time period meets the reckless disregard standard for willfulness.  That is, even before he found out about the outstanding tax liabilities, Plaintiff knew that the Company had ongoing financial difficulties, resulting in Plaintiff extending numerous personal loans to the Company for more than $200,000.  At least once, Plaintiff personally loaned the Company money to meet payroll, and Plaintiff also knew that the ability to pay suppliers to keep up with production was an ongoing problem.  Additionally,

---

[6]  Moreover, Plaintiff's protestations in his deposition that he was merely a salesman and knew little to nothing about taxes or accounting principles in no way diminishes his duty as a responsible person in the Company to ensure that the payroll taxes were being paid.

the United States has presented evidence that before August 2000 the Company's outside accountant Dixon Odom had informed Plaintiff that Dizon was not giving them accurate financial information. Plaintiff's contact at Dixon Odom, Martin Schlaeppi, specifically warned Plaintiff about the financial statements submitted by Dizon, advising him that they were a "real mess."[7] (Schlaeppi Dep., p. 35, docket no. 21, Ex. 9.)

I agree with the United States that even if Plaintiff was never told specifically until August 2000 that the Company was delinquent in paying employment taxes, his knowledge of the Company's inability to meet its debts and its severe cash flow constraints before August 2000, as well as the red flags that had already been raised about Dizon by Plaintiff's accountants at Dixon Odom, gave rise to a duty to confirm that the Company was meeting its payroll tax obligations. Thus, Plaintiff's failure to confirm whether the Company was current with its tax obligations and his failure to take remedial action amount to reckless disregard for the purpose of finding willfulness for the time period before Plaintiff became aware that the payroll taxes were not being paid. In sum, for all these reasons, the court should find that Plaintiff's conduct was willful for purposes of Section 6672 liability for the tax periods

---

[7] Furthermore, as to time period before August 2000, to the extent that Plaintiff contends that he relied on Dizon's sworn statement in a form submitted to the IRS that payroll taxes had been paid, Defendant has shown that the form in fact stated that there was an outstanding balance for the payroll taxes, and the information regarding the outstanding liability was also on a general ledger account.

ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001.

**CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion for summary judgment (docket no. 21) be **GRANTED** and that the court should hold that Plaintiff is liable for the trust fund recovery penalty assessed against him in connection with the Boling Group's failure to pay employment taxes for taxable periods ending June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, and June 30, 2001. To this extent, Plaintiff's motion for summary judgment should be denied (docket no. 19). If the court adopts this Recommendation and enters judgment, Defendant shall submit to the court the exact amount owed by Plaintiff.[8]

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
March 8, 2010

---

[8] In the proposed order accompanying the summary judgment motion, Defendant asks the court to order Plaintiff to pay a penalty of $515,599.02, as of October 19, 2006, plus interest accruing thereafter, pursuant to 28 U.S.C. § 1961(a)(1). (docket no. 21, Attachments 2 & 3.) In the Answer and Counterclaim, Defendant states that Plaintiff is indebted to Defendant for $475,183 as of August 15, 2008, plus interest. (docket no. 6.)